UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| GEOFFREY BAGGETT, | Case No. 17-cv-06805-VC (PR) |
| --- | --- |
| Petitioner, | |
| v. | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |
| M.E. SPEARMAN, | |
| Respondent. | |

Geoffrey Baggett filed a *pro se* petition for a writ of habeas corpus challenging his state criminal conviction, asserting claims of *Miranda* violations, insufficient evidence and sentencing error. Baggett also moves for an evidentiary hearing. The motion for an evidentiary hearing and the petition are denied.

## PROCEDURAL BACKGROUND

Baggett was charged with many counts of sexual conduct with a child, who is his half step-daughter. On July 28, 2014, a jury returned guilty verdicts on many of the counts. Clerk's Transcript ("CT") at 370-73, 498-533. On December 19, 2014, the trial court sentenced Baggett to a term of 40 years to life in prison. CT at 599-603; 623-28. On January 9, 2017, the California Court of Appeal affirmed the judgment. *See People v. Baggett*, 2017 WL 74771 (Cal. App. Jan. 9, 2017) (unpublished). On March 15, 2017, the California Supreme Court denied without comment the petition for review. *See* Resp. Ex. B. On November 28, 2017, Baggett filed this timely petition for a writ of habeas corpus.

## LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act, ("AEDPA"), a

district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This is a highly deferential standard for evaluating state court rulings: "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

## DISCUSSION

The trial proceedings and the evidence presented against Baggett are described by the California Court of Appeal in its opinion affirming the judgment on direct appeal. *See Baggett*, 2017 WL 74771, *1-2. This Court now rules on the claims presented by the habeas petition.

## I. Miranda Violation

Baggett claims the trial court erred in denying his motion to exclude his confession because: (1) the police improperly delayed giving him a *Miranda* warning to 'soften him up' so that he would waive his rights; and (2) "the police continued to question him after he invoked his right to counsel." *Baggett*, 2017 WL 74771, at *2. Baggett defines "softening up" as "the practice of talking to a suspect in custody about innocuous subjects to persuade him to talk once the *Miranda* warnings are given." Traverse at 7, ECF No. 11 at 11.

### A. "Softening Up" Before Giving *Miranda* Warning

#### 1. Federal Authority

In *Miranda v. Washington*, 384 U.S. 436, 444 (1966), the Supreme Court held that a

person subjected to custodial interrogation be advised that "he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney." The warnings must precede any custodial interrogation. *Id.* Once properly advised of his rights, an accused may waive them voluntarily, knowingly and intelligently. *Id.* at 475. The distinction between a claim that a *Miranda* waiver was not voluntary and a claim that such waiver was not knowing and intelligent is important. *Cox v. Del Papa*, 542 F.3d 669, 675 (9th Cir. 2008). The voluntariness component turns on the absence of police overreaching, i.e., external factors, whereas the cognitive component depends upon the defendant's mental capacity. *Id.* Although the burden is on the government to prove voluntariness, a waiver cannot be held involuntary absent official compulsion or coercion. *Colorado v. Connelly*, 479 U.S. 157, 170 (1986).

A federal habeas court must determine, in its independent review of the record, whether, under the circumstances, the challenged confession was obtained consistent with the requirements of the Constitution. *Miller v. Fenton*, 474 U.S. 104, 112 (1985). However, the state court's determination of subsidiary factual questions, like whether the police engaged in intimidation tactics, are entitled to a presumption of correctness under § 2254(d). *Id.*

### 2. Analysis

In his state petition, Baggett relied on *People v. Honeycutt*, 20 Cal. 3d 150, 160 (1977), which condemned the police tactic of "softening up" a suspect before giving the *Miranda* warning. In denying Baggett's claim, the Court of Appeal distinguished Baggett's police interview from that in *Honeycutt* and found that the brief questioning that preceded Baggett's *Miranda* warning did not constitute "softening up." *Baggett*, 2017 WL 74771, at *3.

The transcript of Baggett's interview shows that, before giving the *Miranda* warning, the detective asked Baggett about general administrative information, such as: did he have any weapons on him; did he always keep a weapon in his car; his age, address, place of birth, hair and eye color, profession and marital status.

Thus, Baggett's pre-*Miranda* conversation consisted of "routine booking questions and

responses" about his identity and other statistical information which, even under *Honeycutt*, the case Baggett relies on, does not render a waiver involuntary. *See Honeycutt*, 20 Cal. 3d at 161; *see also Elliot v. Rocha*, 1996 WL 733179, *3 (9th Cir. 1996) (unpublished). Before the warning was given, there were two brief conversations—about Baggett's motorcycle injury and about shooting at a firing range; however, these conversations were so short, they would not have had a "softening up" effect on Baggett.

In his traverse, Baggett argues the questioning about his family and profession prolonged the pre-*Miranda* conversation such that it did soften him up. However, as correctly noted by the Court of Appeal, the warning was given on page 10 of a 77-page transcript; therefore, the total contact between Baggett and the detective before the *Miranda* warning was relatively brief.

Viewing the interview as a whole, the short discussion between Baggett and the detective before Baggett received the *Miranda* warning did not amount to softening up nor did it consist of any behavior that could be characterized as police coercion. The state court's finding that the police did not engage in coercive behavior was not unreasonable and the Court finds, in its independent review of the record, that Baggett's waiver was voluntary.

### B. Invocation of Right to Counsel

#### 1. Federal Authority

Baggett claims, during the police interrogation, he invoked his right to an attorney but the detective kept questioning him.

If a suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney," all questioning must cease. *Miranda*, 384 U.S. at 444-45. A suspect who has expressed a desire to have counsel present during custodial interrogation therefore is not subject to further interrogation by the authorities until counsel is made available to him, unless the suspect himself initiates further communication with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). However, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," questioning need not

cease. *Davis v. United States*, 512 U.S. 452, 459 (1994) (emphasis in original). "Rather, the suspect must unambiguously request counsel." *Id.* at 459-62 ("Maybe I should talk to a lawyer" insufficient to invoke right to counsel).

### 2. Analysis

The relevant section of the interview is as follows:

> Detective:
>
> So, what I'm trying to understand is why would your, as you call it your step-half-daughter, come in here, you know, crying, hysterical um, sitting here for an hour before she would even be able to talk to me, and tell me in such detail uh, things that have happened. Why would she do that?
>
> Baggett:
>
> I don't know. I don't know. I mean she's always been a little, a little troubled. Um, and we do have a close relationship. There's no doubt about that. And I'm just trying to get my head around why she would say that. Um, and as far as why she would come in here hysterical, I have no idea. She's been acting hysterical for the last year and a half since her mom basically kicked her out of the house. She's lived with the boyfriend. Uh, so I'm not, I'm not too sure why. I mean I love her like she's my own flesh and blood. And I'd do anything for her, for the whole family for that matter. And I do the best that I can, too, for the whole family. But I don't know why she would be hysterical coming in here talking to you guys. So . . . now this is a very serious matter. Should I have my attorney present or an attorney present?
>
> Detective: Should you have one present?
>
> Baggett: Yes.
>
> Detective: Do you have one?
>
> Baggett:
>
> No, I don't. But should I get one because we're pretty deep into questioning and so I just you know . . .
>
> Detective:
>
> Well, this is all, what can I say, that's all up to you. Uh, because what you're telling me is that nothing happened. Um, and what I'm trying to figure out is, you know, with all the stuff that's going on, what, what's going on. Uh, so if there's something you're not telling me, you know, I'm trying to see if there's some kind of

5

> misunderstanding like, you know, she's laying in the bed, you said she fell asleep like maybe three times, you know?
>
> Baggett: Uh huh.
>
> Detective:
>
> Did you roll over and your hand landed on her and she took that as something sexual? Have you ever given her a back massage?
>
> Baggett: Well, sure.

ECF No. 8-7 at 31-32.

The state court denied this claim finding that Baggett did not clearly request representation by an attorney. *See Baggett*, 2017 WL 74771 at *4. This finding is not unreasonable. Baggett's statement, "should I have my attorney present . . ." indicates that he was either wondering out loud whether to have an attorney or he was asking the detective for his opinion. *See Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("I think I would like to talk to a lawyer" ambiguous), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003); *see also United States v. Ogbuehi*, 18 F.3d 807, 813 (9th Cir. 1994) ("Do I need a lawyer" or "Do you think I need a lawyer" not even an equivocal request for an attorney).

Baggett argues, under *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991), his request for an attorney was not ambiguous because it could "reasonably be construed to be expression of a desire for the assistance of an attorney in dealing with custodial interrogation." However, this is a pre-*Davis* case. In *Davis*, the Supreme Court explained that the interrogation must stop only when a reasonable officer would understand the request for an attorney was unambiguous in light of the circumstances. *Davis*, 512 U.S. at 459. And, as discussed above, Ninth Circuit cases have held that asking the interrogator his opinion about the need for an attorney is ambiguous.

When Baggett asked the detective for his opinion, the detective responded that Baggett himself had to make that decision. When the officer continued the questioning, Baggett did not return to the topic of having an attorney present, but responded to the detective's questions. Given these circumstances, a reasonable officer would not have understood Baggett's reference to an attorney to be an unambiguous request for counsel.

**II. Sufficiency of Evidence**

Baggett claims there was insufficient evidence to support Count 2, aggravated sexual assault on a child committed through forcible rape, California Penal Code § 269(a)(1), because the evidence did not establish that force was involved.

**A. Federal Authority**

On habeas review, evidence is sufficient to support a conviction when, viewed in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The habeas court must presume the trier of fact resolved any conflict in the evidence in favor of the prosecution, and must defer to that resolution. *Id.* at 326.

*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of deference. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012); *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). First, the state courts are required to view the evidence in the light most favorable to the prosecution and ask whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Kyzar v. Ryan*, 780 F.3d 940, 949 (9th Cir. 2015). Second, under AEDPA, habeas relief is warranted only if the state courts unreasonably applied the already deferential *Jackson* standard. *Id.*

**B. Relevant Background**

Baggett had previously been married to the victim's mother. He often babysat for the victim and her brothers. Reporter's Transcript ("RT") at 326; ECF No. 8-11 at 62. When the victim was seven years old, Baggett planned a camping trip with the victim and her brothers. The children stayed over Baggett's house the night before they were to go camping. ECF No. 8-11 at 65. No adults were present except for Baggett. ECF No. 8-11 at 68. The victim testified to events that happened that night. She was woken up at about 1 a.m. by Baggett. *Id.* She was in Baggett's bed right next to him because she fell asleep after watching a movie. ECF No. 8-11 at 69. Baggett took her clothes off. ECF No. 8-11 at 68-69. She wasn't quite sure what Baggett was doing because she was really confused. ECF No. 8-11 at 69. She felt almost paralyzed. *Id.*

7

She just "kind of laid like a plank." *Id.* She lay on the bed, just stiff; she didn't react or do anything. *Id.* "I just – laid there. And he just took it off." *Id.* Baggett took off his clothes. ECF No. 8-11 at 70. He put his penis inside her vagina. *Id.* She remembered that the penis did not go inside her completely. *Id.* She could feel it inside her. *Id.* She was positive it was his penis and not his hand. ECF No. 8-11 at 71. This lasted for about ten minutes. *Id.* After that, he stopped and "he laid on his back and he pushed my head down toward his penis and made me perform oral sex." *Id.* He told her to "put her mouth on it." *Id.* She opened her mouth, but did not know what to do. *Id.* Baggett was rubbing her back and his hand was pushing her head. ECF No. 8-11 at 71-72.

**C. Analysis**

Under California law, rape is sexual intercourse "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person of another." *Baggett*, 2017 WL 74771 at *4 (citing Cal. Crim. Code § 261(a)(2)). California authority defines "duress" as "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." *Id.* (quoting *People v. Cochran*, 103 Cal. App. 4th 8, 13-14 (2002)). To determine the existence of duress, the following factors should be considered: (1) age of the victim; (2) victim's relationship to defendant; (3) threats to harm the victim; and (4) physically controlling the victim when the victim attempts to resist. *Id.* The fact that the victim testifies that the defendant did not use force or threats does not require a finding of no duress because the victim's testimony must be considered in light of her age and her relationship to the defendant. *Id.*

Although the victim here did not testify that Baggett used violence or fear of immediate bodily injury, her testimony shows that she was in duress when Baggett attempted to have sexual intercourse with her. The victim was awakened in the middle of the night by Baggett taking off her clothes and then attempting to insert his penis in her vagina. She testified that she was

petrified and just lay on the bed like a plank, petrified and paralyzed. She was a seven-year old and Baggett was a 43-year old man who was a father figure to her.

Viewing the evidence in the light most favorable to the prosecution—the age of the victim, her relationship to Baggett, her testimony of being petrified and paralyzed during Baggett's attempt at intercourse—any rational trier of fact could have found the essential elements of duress beyond a reasonable doubt. Therefore, the state court's rejection of this claim was not contrary to or an unreasonable application of Supreme Court authority, nor was the state court's finding of duress unreasonable in light of the totality of the evidence.

**III. Sentencing Error**

Baggett claims the trial court erred by imposing consecutive 15-year-to-life sentences on Count 2, rape upon a child of less than 14 years of age, and Count 4, oral copulation upon a child of less than 14 years of age.

A claim of sentencing error is generally not cognizable on federal habeas review. *See Walker v. Endell*, 850 F.2d 470, 476 (9th Cir. 1987) (state sentencing courts must be accorded wide latitude in their decisions as to punishment which means a federal court may not review a state sentence that is within statutory limits); *see also Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (state decision whether to impose sentences concurrently or consecutively is matter of state criminal procedure and not within purview of federal habeas review). Based on this authority, the sentencing claim is not cognizable on federal habeas review and is denied.

Baggett also argues his counsel was ineffective for failing to request the trial court to make a specific finding that counts 2 and 4 occurred on separate occasions. In Baggett's sentencing brief, defense counsel argued, for consecutive sentences to be imposed, Rule 4.426 of the California Rules of Court required the sentencing court to determine whether the crimes were committed on separate occasions and, in making this determination, the judge must consider "whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect on his or her actions and nevertheless resumed sexually assaultive behavior." *See* ECF No. 8-6 at 249 (Baggett's sentencing memorandum citing Rule 4.426 of

California Criminal Rules of Court).

At the sentencing hearing, the prosecutor stated, to impose consecutive sentences on counts 2 and 4, the court had to make a finding about the defendant's conduct. ECF No. 8-16 at 77. The court responded, "Well, let me just make that determination now." ECF No. 8-16 at 78. Defense counsel interrupted stating he wanted to speak on that issue and then made an impassioned argument that, not only did the facts fail to establish that Baggett had time to reflect on the second sex act, but that subjecting him to a sentence of 15-years-to-life amounted to cruel and unusual punishment. ECF No. 8-16 at 78-80 (the sentence is "a major, major thing to do based on a lack of evidence as to this critical issue of time to reflect. We're saying there isn't. And we had asked that they run to concurrent.").

The court then reviewed the victim's statement, "He, um undressed me very, very, you know, not – not he wasn't like raping me violently. It was very slow so that I – probably so I wouldn't get scared." ECF No. 8-16 at 80-81. The court concluded, "that, to me, indicates that there was plenty of time to know what was going on. He was moving in that fashion. That's the reason it's applicable." ECF No. 8-16 at 81.

Baggett argues the court's statement was improper because it "did not explicitly say it found separate occasions nor did it explain the reasons for whatever finding it made." Trav. at 21. However, the court clearly was responding to the prosecutor's statement that it had to make a finding to support consecutive sentences and to defense counsel's argument that Baggett did not have time to reflect before the second sex act. Putting the court's statement in context, it is clear that it imposed consecutive sentences based on the victim's testimony that Baggett was moving very slowly such that he had time to reflect between the two sex acts.

There was no reason for counsel to point out to the court "that sufficient reasons had not been given" after the court stated its ruling was based on the victim's testimony. *See Juan v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (counsel's failure to make futile objection not deficient performance).

### IV. Evidentiary Hearing

Baggett requests an evidentiary hearing on his *Miranda* claims. This request is denied

because Baggett has not shown he is entitled to an evidentiary hearing in connection to these claims. *See Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (when state court record precludes habeas relief under § 2254(d), district court not required to hold evidentiary hearing).

## CONCLUSION

Baggett's petition for a writ of habeas corpus is denied. A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Clerk shall enter judgment in favor of the respondent and close the file.

**IT IS SO ORDERED.**

Dated:   September 27, 2018

_____
VINCE CHHABRIA
United States District Judge